UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>1) A&A TANK TRUCK CO.,<br>2) OMNI ENVIRONMENTAL SOLUTIONS, INC.,<br>3) AIG SPECIALTY INSURANCE COMPANY,<br>4) DANIEL FLENER,<br>5) DANIELLE FLENER and<br>6) OKLAHOMA CORPORATION COMMISSION,<br><br>Defendants. | Case No.: CIV 22-323-JAR<br><br>**JURY TRIAL DEMAMDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Ironshore Specialty Insurance Company ("Ironshore"), by and through its attorneys, for its Complaint for Declaratory Judgment against defendants A&A Tank Truck Co. ("A&A"), Omni Environmental Solutions, Inc. ("Omni"), AIG Specialty Insurance Company ("AIG"), Daniel Flener, Danielle Flener and the Oklahoma Corporation Commission ("OCC"), alleges as follows:

**I.   NATURE OF ACTION**

1.   This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 arising from a dispute over insurance coverage under an Ironshore Site Pollution Incident Legal Liability Select (SPILLS) policy issued to nonparty Gibson Omni Parent Inc. as Named Insured (the "Ironshore Policy").

2.   The coverage dispute pertains to an Oklahoma Corporation Commission

proceeding (the "OCC Proceeding") initiated by a complaint filed by the nominal plaintiffs therein Daniel Flener and Danielle Flener (collectively, the "Fleners") against Ironshore's putative insured A&A, which complaint alleges that the Fleners' real property has been contaminated by A&A's disposal of contaminating fluid materials from a disposal well known as Kier #1A, owned or leased and operated by A&A (the "Kier #1-A well").  A&A seeks defense and indemnity coverage under the Ironshore Policy.

3. The coverage dispute also pertains to an action brought against A&A as well as Ironshore's putative insured Omni by the Fleners in the District Court of Latimer County, State of Oklahoma, Case No. CJ-21-29  (the "*Flener* Action").  The petition also alleges that the Fleners' real property has been damaged as a result of the disposal of contaminating fluid materials from the Kier #1-A well. Omni and A&A seek defense and indemnity coverage under the Ironshore Policy.

4. An actual, justiciable controversy exists concerning coverage for the OCC Proceeding and *Flener* Action under the Ironshore Policy.  Ironshore contends that the Ironshore Policy provides no coverage for the OCC Proceeding since it pertains only to the Kier #1A well, and that the Ironshore Policy provides no coverage for the *Flener* Action since, among other reasons, any such coverage is precluded by Endorsement No. 7 to the Ironshore Policy. Endorsement No. 7 amends the cited Insuring Agreements, which thus do not insure a **Pollution Incident**[1] that commenced in its entirety before the Ironshore Policy's May 3, 2018 **Inception Date**.

5. Even if the Ironshore Policy provides coverage for the *Flener* Action or the OCC Proceeding (which Ironshore denies), under Endorsement No. 12 to the Ironshore Policy, coverage

---

[1] Bolded terms are defined terms under the Ironshore Policy.

thereunder expressly applies in excess of Contractor's Pollution Liability policy no. CPO 14206032 issued by AIG (the "CPL Policy") to Omni Environmental Solutions, Inc. Upon information and belief, AIG has denied coverage to A&A for the *Flener* Action and the OCC Proceeding. Ironshore disputes AIG's denial of coverage, and therefore seeks to have AIG defend and indemnify Omni and A&A in the *Flener* Action and OCC Proceeding before any coverage under the Ironshore SPILLS Policy would apply. Ironshore therefore seeks a declaratory judgment and/or equitable contribution from AIG under the CPL Policy,

6. To the extent the Ironshore Policy provides coverage for the *Flener* Action and the OCC Proceeding, Ironshore also seeks a judgment declaring that A&A and Omni are not entitled to reimbursement for costs incurred (i) before the *Flener* Action was tendered to Ironshore, (ii) without Ironshore's knowledge or consent, as required by the Ironshore Policy or (iii) for matters to which the Ironshore Policy does not apply, including the OCC Proceeding.

## II.   THE PARTIES

7. Plaintiff Ironshore is an insurance company organized and existing under the laws of the State of Arizona, with its principal place of business located in Boston, Massachusetts.

8. Upon information and belief, defendant A&A Tank Truck Co. is an Oklahoma Corporation with headquarters at 3230 Bart Conner Drive Norman, Oklahoma 73072 and doing business in Latimer County and in other locations in Oklahoma as a "brand" of Omni Environmental Solutions, Inc.

9. Upon information and belief, defendant Omni Environmental Solutions, Inc. is a Delaware corporation with headquarters at 4500 NE Evangeline Throughway, Carencro, Louisiana 70520, doing business in Oklahoma under the name of OES, Inc.

10. Upon information and belief, defendant AIG Specialty Insurance Company is an

insurance company organized and existing under the laws of the State of Illinois with its principal place of business located in New York, New York, and issues policies applying in Louisiana and Oklahoma.

11. Upon information and belief, defendants Daniel Flener and Danielle Flexner own property in this District and on which they and their children reside, and where they have attempted to use that property for business.

12. Upon information and belief, defendant Oklahoma Corporation Commission ("OCC") is a regulatory agency for the State of Oklahoma with emphasis on the fuel, oil and gas, public utilities, and transportation industries.

### III.   JURISDICTION AND VENUE

13. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "12" inclusive, with the same force and effect as if set forth herein.

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because diversity of citizenship exists between Ironshore, on the one hand, and Omni, A&A, AIG, Daniel Flener, Danielle Flener and the OCC, on the other hand. The amount in controversy exceeds $75,000.00.

15. This Court has personal jurisdiction over A&A because it is a resident of Oklahoma and conducts business in Oklahoma; over Omni and AIG because they both conduct business in the State of Oklahoma; over the Fleners because they reside in the State of Oklahoma; and over the OCC because it is an agency of the State of Oklahoma.

16. The Court may declare the rights and other legal relations of Ironshore, A&A, Omni and AIG pursuant to 28 U.S.C. § 2201 because an actual case and controversy exists between and among them within the jurisdiction of the Court. The Fleners and the OCC are added as

defendants to be bound by a declaratory judgment the court issues in this case.

17. Venue in this district is appropriate pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and the defendants are subject to the Court's personal jurisdiction with respect to this action.

## IV.   THE IRONSHORE POLICY

18. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "17" inclusive, with the same force and effect as if set forth herein.

19. Ironshore issued SPILLS policy no. 003581100 to Gibson Omni Parent, Inc. as Named Insured for the period May 3, 2018 to May 3, 2021 (the "Ironshore Policy"). A copy of the Ironshore Policy is annexed hereto as Exhibit A.

20. The Ironshore Policy's Coverage A provides a limit of liability of $10,000,000 per **Pollution Incident** and aggregate, subject to a $100,000 deductible (including **Legal Costs**) for each **Pollution Incident**. See Exhibit A at IS00001-2.

21. In pertinent part, the insuring agreement of the Ironshore Policy's Coverage A (Third Party Claims for Bodily Injury, Property Damage or Remediation Expenses) provides:

> To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Remediation Expenses** arising from a **Pollution Incident**, provided that the **Claim** is first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

See, Exhibit A at IS00004.

22. Under Section IX.S. of the Ironshore Policy, the term "**Loss**" is defined as follows:

**S. Loss** means:
1. A monetary judgment, award or settlement of compensatory damages arising from **Bodily Injury** or **Property Damage;**
2. Punitive, exemplary or multiplied damages, and civil fines, penalties and

> assessments to the extent any of the foregoing is insurable under applicable law, arising from **Bodily Injury** or **Property Damage**;
> 3. **Legal Costs**;
> 4. **Remediation Expenses**; and
> 5. **Emergency Response Expenses.**

See Exhibit A at IS00017.

23. Under Section IX.BB. of the Ironshore Policy, the term "**Property Damage**" is defined in pertinent part as follows:

> **BB. Property Damage** means:
> 1. Physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use of that property;
> 2. Loss of use of tangible property owned by parties other than the **Insured**, that is not physically injured or destroyed;
> 3. Diminished value of property owned by parties other than the **Insured**
>    . . . . **Property Damage** does not include **Remediation Expenses**.

See Exhibit A at IS00018-19.

## V.   THE OCC PROCEEDING

24. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "23" inclusive, with the same force and effect as if set forth herein.

25. Upon information and belief, on or about July 15, 2020 the Fleners filed a complaint against A&A with the OCC regarding alleged discharges from the Kier #1-A well. A copy of the OCC's Incident and Complaint Investigation Report (the "OCC Report") is annexed hereto as Exhibit B.

26. The OCC Report pertains to the Kier #1-A well and, under the heading "Nature of Complaint," it states: "Commercial disposal suspected of salt water purge."

27. Upon further information and belief, on September 28, 2020, an OCC field inspector met with A&A and/or Omni at the Kier #1-A well and required the well to be shut in.

28. On November 2, 2021, A&A filed an application with the OCC to have it

determined whether A&A is the responsible party for the discharges alleged by the Fleners regarding the Kier #1-A well and to determine the scope of any response that may be required.

## VI.   THE *FLENER* ACTION

29.   Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "28" inclusive, with the same force and effect as if set forth herein.

30.   In November 2021, the Fleners commenced an action in the District Court of Oklahoma, Latimer County, captioned *Daniel Flener, et al. vs. A&A Tank Truck Co., et al.*, Case No. CJ-21-29, against A&A and Omni ("*Flener* Action").  A copy of the Petition is annexed hereto as Exhibit C.

31.   The Petition alleges that A&A and Omni owned and operated an oilfield disposal well named the Kier #1-A.

32.   The Petition further alleges that plaintiffs' property was damaged by the disposal of contaminated fluid materials from the Kier #1-A well.  Specifically, the Petition alleges that the contaminated disposed fluids on the Fleners' property (i) destroyed a natural spring that produced clean drinking, (ii) are starting to seep out of the ground, appearing as salt, at multiple places on the Fleners' property and (iii) imposes stigma to the value of Fleners' property, destroyed the use value of the Plaintiffs' water, and interferes with the Fleners' use of their land and water.

33.   The Petition asserts causes of action against A&A and Omni for nuisance, trespass, negligence, negligence *per se* and unjust enrichment.

34.   The Petition seeks an award against A&A and Omni for actual and punitive damages, interest, costs and attorney's fees.

## VII.   COVERAGE DETERMINATION

35.   Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "34" inclusive, with the same force and effect as if set forth herein.

36. On June 10, 2021, Ironshore received First Notice of Loss ("FNOL") from A&A and Omni regarding the Fleners' pre-suit claim that "a Saltwater Disposal Well (SWD) operated by [A&A] has caused and will continue to cause damage to his property and a marijuana crop he apparently harvested recently." The FNOL further states that A&A and Omni "have been working with the [OCC] and they "only recently were advised that the landowner is pursuing a separate claim."

37. On December 1, 2021, the *Flener* Action was tendered to Ironshore.

38. On February 17, 2022, Ironshore denied coverage for the *Flener* Action based on the Ironshore Policy's Endorsement No. 7, titled New Conditions Coverage Amendatory Endorsement, which amends the Ironshore Policy's Coverage A (Third Party Claims for Bodily Injury, Property Damage or Remediation Expenses).

39. The Ironshore Policy's Endorsement No. 7 (New Conditions Coverage Amendatory Endorsement) provides in pertinent part:

> Solely with respect to any **Pollution Incident** on, under or migrating from the **Covered Property(ies)** scheduled below on this Endorsement, Paragraphs **A.**, **B.**, **C., D., E.** and **F.** of Section **I. COVERAGE GRANTS** are amended to include the following**:** *This coverage shall only apply if the* **Pollution Incident** *giving rise to the* **Claim** *[or]* **Loss** *. . . commenced, in its entirety, on or after the* **Inception Date**. (emphasis supplied)

See Exhibit A at IS00028-30.

40. On August 1, 2022, A&A and Omni requested that Ironshore reconsider its denial of coverage for the *Flener* Action.

41. On August 29, 2022, based on documents A&A and Omni submitted to Ironshore, Ironshore amended its coverage denial and agreed to defend A&A and Omni against the *Flener* Action, subject to a reservation of rights to deny coverage.

42. On September 9, 2022, for the first time, A&A and Omni submitted to Ironshore reimbursement costs which total $918,760.19 allegedly incurred in connection with the *Flener* Action and OCC Proceeding ("Reimbursement Request").

43. On October 11, 2022, Ironshore rejected the Reimbursement Request on grounds that the alleged costs are not covered under the Ironshore Policy because they were incurred (i) before the *Flener* Action was tendered to Ironshore, (ii) without Ironshore's prior knowledge or consent, as required by the Ironshore Policy and/or (iii) for a **Claim** or matters to which the Ironshore Policy does not apply, including the OCC Proceeding. Ironshore also rejected the Reimbursement Request because A&A and Omni failed to allocate the alleged costs between the *Flener* Action and OCC Proceeding.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Endorsement No. 7 –**
**New Conditions Coverage Amendatory Endorsement)**

44. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "43" inclusive, with the same force and effect as if set forth herein.

45. The Ironshore Policy's Endorsement No. 7 (New Conditions Coverage Amendatory Endorsement), amends the Ironshore Policy's Coverage A insuring agreement (and others). It provides in pertinent part that with respect to any **Pollution Incident** on, under or migrating from the **Covered Property(ies)** scheduled on Endorsement No. 7, the Policy's Coverage A insuring agreement applies only if the **Pollution Incident** giving rise to the **Claim** or **Loss** commenced, in its entirety, on or after the **Inception Date** of May 3, 2018.  See, Exhibit A at IS00028-30.

46. The schedule on Endorsement No. 7, titled "Schedule of Covered Property(ies)," includes the following **Covered Property**: Kier #1 SWD Well - Latimer County, OK

(NE/SE/SE/NW Section 2-T5N-R19E) (Leased) ("Kier #1").

47. Under Section IX.AA. of the Ironshore Policy, the term "**pollution incident**" is defined to include "the discharge, dispersal, release, escape, migration, or seepage of **Pollutants** on, in, into, or upon land, **Conveyances**, structures, the atmosphere, any watercourse or body of water including surface water or groundwater." See, Exhibit A at IS00018.

48. Under Section IX.M. of the Ironshore Policy, the term "**Inception Date**" is defined as "the applicable date set forth in **Item 3.** of the Declarations," namely, May 3, 2018. See, Exhibit A at IS00017.

49. Endorsement No. 7 is not an exclusion. It amends the Ironshore Policy's Coverage A Insuring Agreement. As a result, the insured bears the burden of proving that the *Flener* Action and the OCC Proceeding each results from a **Pollution Incident** that falls within Coverage A, including Endorsement No. 7.

50. Ironshore seeks a declaration that to the extent the *Flener* Action and/or OCC the Proceeding allege or establish a **Pollution Incident** on, under or migrating from Kier #1-A well and did not commence in its entirety on or after the May 3, 2018 **Inception Date**, such **Pollution Incident** is not covered by the Ironshore Policy's Coverage A.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Non-Disclosure Exclusion)**

51. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "50" inclusive, with the same force and effect as if set forth herein.

52. The Ironshore Policy's Exclusion M, Non-Disclosure Exclusion, in pertinent part, excludes coverage for:

> Any **Pollution Incident**:
> 1. Which is known by a **Responsible Insured** prior to the **Inception Date** and not specifically disclosed in writing in the application for this Policy; or

    **2.** On, under or migrating from a location which is known by a **Responsible Insured** and not specifically disclosed to the Company in writing prior to the Company's addition of such location to this Policy.

See Exhibit A at IS00007.

53. Under Section IX.EE. of the Ironshore Policy, the term "**Responsible Insured**" is defined as follows:

> **EE. Responsible Insured** means:
> 1. The manager or supervisor of the **Named Insured** responsible for environmental affairs or health and safety affairs, control or compliance at a **Covered Property**;
> 2. The manager of a **Covered Property**; or
> 3. Any officer, director, risk manager or partner of the **Named Insured.**

See, Exhibit A at IS00019.

54. Ironshore seeks a declaration that to the extent the *Flener* Action and/or OCC Proceeding allege or establish such described **Pollution Incident**, it is excluded by Exclusion M. (the Non-Disclosure Exclusion). Ironshore is entitled to a declaration that the *Flener* Action and/or the OCC Proceeding are not covered by the Ironshore Policy's Coverage A, based on Ironshore's Non-Disclosure Exclusion.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Declaratory Judgment – Insured's Non-Compliance Exclusion)**

55. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "54" inclusive, with the same force and effect as if set forth herein.

56. The Ironshore Policy's Exclusion I. (Insured's Non-Compliance Exclusion) excludes coverage for:

> Any **Pollution Incident** or **Remediation Expenses** that result from or are associated with a **Responsible Insured's** intentional disregard of, or deliberate, knowing, willful or dishonest non-compliance with any **Environmental Law**, . . . or any other statute, regulation, ordinance, order, administrative complaint, notice of violation, notice letter, or instruction by or on behalf of any governmental agency or representative or other federal, state, local or other applicable legal requirement.

See Exhibit A at IS00006.

57. Under Section IX.H. of the Ironshore Policy, the term "**Environmental Law**" is defined as follows:

> **Environmental Laws** means any federal, state, provincial, municipal or local laws, including, but not limited to, statutes, rules, ordinances, guidance documents, regulations and all amendments thereto, including state voluntary cleanup or risk based corrective action guidance, and governmental, judicial or administrative orders and directives, that are applicable to a **Pollution Incident**.

See, Exhibit A at IS00016.

58. Ironshore seeks a declaration that to the extent the *Flener* Action and/or the OCC Proceeding allege or establish a **Pollution Incident** that is excluded by Exclusion I. (the Non-Compliance Exclusion), the *Flener* Action and/or the OCC Proceeding are not covered by the Ironshore Policy's Coverage A.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Declaratory Judgment – Waste Processing, Treatment or Disposal Exclusion)**

59. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "58" inclusive, with the same force and effect as if set forth herein.

60. The Ironshore Policy's Waste Processing, Treatment or Disposal Exclusion (as amended by Endorsement No. 9) provides in pertinent part as follows:

> 2. Solely with respect to any **Pollution Incident** on, under or migrating from a **Covered Property**, the Exclusion entitled **WASTE PROCESSING, TREATMENT OR DISPOSAL** set forth in Section **III. EXCLUSIONS – ALL COVERAGES** is deleted in its entirety and replaced with the following:
>
> **WASTE PROCESSING, TREATMENT OR DISPOSAL**
>
> Any processing, treatment or disposal, or the arranging for the processing, treatment or disposal, of waste. This exclusion shall not apply to **Waste Disposal Activities**, or to disposal wells owned or operated by the **Named Insured** provided that such disposal wells are properly licensed by the appropriate federal, state or local authority to accept such waste materials as of the date of the transfer, storage,

treatment or disposal of such waste materials. See Exhibit A at IS00033-34.

61. Under Section IX.II. of the Ironshore Policy, the term "**Waste Disposal Activities**" is defined as follows: "**Waste Disposal Activities** means the processing, treatment or disposal, or the arranging for the processing, treatment or disposal, of waste at a **Non-Owned Disposal Site**, provided that such waste first originates from a **Covered Property**." See, Exhibit A at IS00020.

62. Ironshore seeks a declaration that to the extent the *Flener* Action and/or the OCC Proceeding allege or establish such activity, it is excluded by the Waste Processing, Treatment or Disposal Exclusion. Ironshore is entitled to a declaration that the *Flener* Action and/or the OCC Proceeding are not covered by the Ironshore Policy's Coverage A.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Declaratory Judgment – Late Notice)**

63. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "62" inclusive, with the same force and effect as if set forth herein.

64. The Ironshore Policy's Section IV. (Claims and Notice Provisions) provides in pertinent part that as a condition precedent to any coverage provided by the Ironshore Policy, the insured must comply with specified claim and notice provisions. See, Exhibit A at IS00008-9.

65. A&A and Omni were required to comply with the claim and notice provisions set forth under the Ironshore Policy's Section IV.

66. A&A and Omni failed to comply with the Ironshore Policy's claim and notice provisions with respect to the *Flener* Action, the OCC Proceeding and the matters alleged therein.

67. Ironshore seeks a declaration that to the extent the *Flener* Action and/or the OCC Proceeding allege or establish a covered **Pollution Incident**, Ironshore is entitled to a declaration that the *Flener* Action and/or the OCC Proceeding are not covered by the Ironshore Policy's

Coverage A., based on the failure of A&A and Omni to comply with Ironshore's Claims and Notice provisions.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaratory Judgment – Other Insurance Exclusion)

68. Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "67" inclusive, with the same force and effect as if set forth herein.

69. The Ironshore Policy's Endorsement No. 15 (Other Insurance Exclusion Amendatory Endorsement) provides as follows:

> The exclusion entitled **OTHER INSURANCE** set forth in Section **III. EXCLUSIONS – ALL COVERAGES is** deleted in its entirety and replaced with the following:
>
> **OTHER INSURANCE**
> Any **Loss** covered under any other valid and collectible insurance, whether primary, excess, contingent, self-insurance, deductible or any other basis, including but not limited to the policies scheduled below and any renewals or replacements thereof; however, this insurance shall apply in excess of any such other valid and collectible insurance.

See, Exhibit A at IS00052-53.

70. The schedule on Endorsement No. 9, titled "Schedule of Policies," lists the following policy:

| Coverage | Policy Number | Insurer | Policy Period | Limits of Insurance |
|---|---|---|---|---|
| CONTRACTOR'S POLLUTION LIABILITY (CPO) | CPO 14206032 | AIG SPECIALTY INSURANCE COMPANY | From: May 2, 2018 To: May 2, 2020 | $10,000,000 |

71. The Ironshore Policy's Other Insurance Exclusion, as amended by Endorsement No. 15, provides in pertinent part that to the extent it provides coverage for **Loss**, such coverage shall apply in excess of AIG's Contractor's Pollution Liability ("CPL") policy no. CPO 14206032 ("AIG Policy") and any renewals or replacements thereof. See, Exhibit A at IS00052-

53.

72.　Ironshore contends that AIG's CPL policy provides defense and indemnity coverage for the OCC Proceeding and/or the *Flener* Action.

73.　Ironshore seeks a declaration that to the extent the Ironshore Policy provides coverage for the *Flener* Action and/or the OCC Proceeding, such coverage applies in excess of the AIG's CPL Policy and any renewal or replacements thereof.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**(Declaratory Judgment – Alleged Costs)**

74.　Ironshore repeats and reiterates each and every allegation made in paragraphs designated "1" through "73" inclusive, with the same force and effect as if set forth herein.

75.　The Ironshore Policy's Section II. (Defense) provides in pertinent part as follows:

> The Company has the right and duty to defend, including the right to select and appoint counsel to represent, the **Insured** against any **Claim**, even if groundless, false or fraudulent, to which this Policy applies. However, the Company has no duty to defend the **Insured** against any **Claim** to which this Policy does not apply . . . Upon the **Insured's** satisfaction of any applicable deductible amounts, **Legal Costs** shall reduce the Limits of Liability shown in Item 5. of the Declarations . . . .

See Exhibit A at IS00005.

76.　Under Section IX.Q. of the Ironshore Policy, the term "**Legal Costs**" is defined as follows:

> **Legal Costs** means attorneys' fees and other costs, charges and expenses incurred in the investigation, adjustment, defense, or settlement of any **Claim** for **Loss**, or in connection with the payment of any **Remediation Expenses**. **Legal Costs** include the fees and expenses of consultants, expert witnesses, accountants, court reporters, and other vendors, for goods or services in connection with such investigation, adjustment, defense, or settlement, whether incurred by the **Insured**, defense counsel, or the Company.

See Exhibit A at IS00017.

77.　The Ironshore Policy's Section V., paragraph B. (The Insured's Duties) provides

{N2266547.1 }　　16

in pertinent part that the "**Named Insured** shall have the duty to clean up the **Pollution Incident** to the extent required by **Environmental Laws**, by retaining, under written contract, competent professionals or contractors mutually acceptable to the Company and the **Named Insured**." In addition, the "**Named Insured** shall notify the Company of actions and measures taken pursuant to this Paragraph prior to the execution of those actions and measures . . . ." See Exhibit A at IS00009.

78. In their Reimbursement Request, defendants A&A and Omni submitted certain alleged costs to Ironshore for reimbursement under the Ironshore Policy ("Alleged Costs").

79. A portion of the Alleged Costs were incurred before the *Flener* Action was tendered to Ironshore.

80. A portion of the Alleged Costs were incurred without Ironshore's prior knowledge or consent.

81. A portion of the Alleged Costs were incurred for **Claims** or matters to which the Ironshore Policy does not apply, including the OCC Proceeding.

82. A&A and Omni also have failed to allocate the Alleged Costs between the *Flener* Action and the OCC Proceeding.

83. Ironshore seeks a declaration that to the extent the Ironshore Policy provides coverage for the *Flener* Action and/or the OCC Proceeding, A&A and Omni are not entitled to reimbursement for and the Ironshore Policy will not provide coverage for amounts incurred (i) before the *Flener* Action was tendered to Ironshore, (ii) without Ironshore's prior knowledge or consent, as required by the Ironshore Policy or (iii) for a **Claim** or matters to which the Ironshore Policy does not apply including the OCC Proceeding.

## JURY TRIAL DEMAND

84. Ironshore hereby demands a jury trial on all issues triable by a jury.

WHEREFORE, IRONSHORE requests a declaratory judgment against A&A, Omni, AIG, Daniel Flener, Danielle Flener and the Oklahoma Corporation Commission pursuant to 28 U.S.C. § 2201, declaring that:

(i) the Ironshore Policy does not provide coverage for the (a) *Flener* Action because it does not allege a **Pollution Incident** that falls within the Ironshore Policy's Endorsement No. 7 (New Conditions Coverage Amendatory Endorsement) and (b) the OCC Proceeding because it pertains to the non-covered Kier #1A well;

(ii) the *Flener* Action and/or the OCC Proceeding are excluded under the Ironshore Policy's Exclusion M. (Non-Disclosure Exclusion) and therefore are not covered under the Ironshore Policy's Coverage A;

(iii) the *Flener* Action and/or the OCC Proceeding are excluded under the Ironshore Policy's Exclusion I. (Insured's Non-Compliance Exclusion) and therefore are not covered under the Ironshore Policy's Coverage A;

(iv) the *Flener* Action and/or the OCC Proceeding are excluded under the Ironshore Policy's Waste Processing, Treatment or Disposal Exclusion (as amended by Endorsement No. 9) and therefore are not covered under the Ironshore Policy's Coverage A;

(v) the Ironshore Policy does not provide coverage for the *Flener* Action and/or the OCC Proceeding because A&A and Omni failed to comply with the Ironshore Policy's Claims and Notice provisions;

(vi) the AIG Policy provides coverage for the *Flener* Action and/or the OCC

Proceeding, and the Ironshore Policy applies, if at all, in excess of the AIG Policy;

(vii)   to the extent the Ironshore Policy provides coverage for the *Flener* Action and/or the OCC Proceeding, such coverage applies in excess of the AIG Policy and any renewal or replacements thereof; and

(viii)  to the extent the Ironshore Policy provides coverage for the *Flener* Action, it does not provide coverage for amounts incurred (i) before the *Flener* Action was tendered to Ironshore, (ii) without Ironshore's prior knowledge or consent and/or (iii) for a **Claim** or matters to which the Ironshore Policy does not apply including the OCC Proceeding. Ironshore also is entitled to recoupment and/or reimbursement for any amounts paid on behalf of A&A and Omni for non-covered portions of the *Flener* Action and the OCC Proceeding.

Dated:  November 16, 2022

                Respectfully submitted,

                */s/ Christopher Wolek*
                George R. Mullican, OBA #16701
                Christopher D. Wolek, OBA #19612
                **MULLICAN & HART, P.C.**
                15 East Fifth Street, Suite 2200
                Tulsa, Oklahoma 74103
                918-794-6500 Telephone
                918-794-6068 Facsimile

                -and-

                Neal M. Glazer
                nglazer@londonfischer.com
                Jonathan L. Kranz
                jkranz@londonfischer.com
                LONDON FISCHER LLP
                59 Maiden Lane
                New York, New York 10038
                T: (212) 331-9572
                LF File No.: 701.056

                Attorneys for Plaintiff
                IRONSHORE SPECIALTY INSURANCE COMPANY