IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

IRONSHORE SPECIALTY          )
INSURANCE COMPANY,           )
                             )
            Plaintiff,       )
                             )
v.                           )          Case No. CIV-22-323-JAR
                             )
A & A TANK TRUCK CO.;        )
OMNI ENVIRONMENTAL           )
SOLUTIONS, INC.;             )
AIG SPECIALTY INSURANCE      )
COMPANY;                     )
DANIEL FLENER;               )
DANIELLE FLENER; and         )
OKLAHOMA CORPORATION         )
COMMISSION,                  )
                             )
            Defendants.      )

## OPINION AND ORDER

This matter comes before the Court on the following Motions:  (1)
Defendants A & A Tank Truck Co. and Omni Environmental Solutions Inc.'s
Motion to Stay or Dismiss Case, or to Transfer Case to Western District
of Louisiana to Determine First-to-File Issues (Docket Entry #27); (2)
Defendant Oklahoma Corporation Commission's Motion to Dismiss Under the
Eleventh Amendment, for Lack of Subject Matter Jurisdiction and Improper
Venue (Docket Entry #49); and (3) Motion of Defendants Daniel and
Danielle Flener to Dismiss Plaintiff's Claim Against Them as Moot (Docket
Entry #56).  The parties consented to the jurisdiction of the United
States Magistrate Judge in this case on June 28, 2023.

### Facts Applicable to All Motions

On August 1, 2022, Omni Environmental Solutions, Inc. ("Omni") and

1

A & A Tank Truck Co. ("A & A") filed a "Petition for Declaratory Judgment and Damages" against Ironshore Specialty Insurance Company ("Ironshore") in the 15th Judicial District Court, Parish of Lafayette, State of Louisiana.  Substantively, the action alleged that Ironshore issued a Site Pollution Incident Legal Liability Select insurance policy (No. 003581100 effective 5/3/19 to 6/30/21)(the "Policy") to Gibson Omni Parent Inc. in Carenero, Louisiana with Omni and A & A as named insureds under the Policy.  The Policy allegedly covered "certain pollution and environmental claims and losses" pertaining to, *inter alia*, the Keir Unit 1-A disposal well located in NE/4 SE/4 SE/4 NW/4 of Section 2-T5N-R19E, Latimer County, Oklahoma.

The action further alleged that Daniel and Danielle Flener (the "Fleners") purchased property in Oklahoma on February 14, 2020 and discovered pollution on the property between February and July of 2020. The Fleners then filed a complaint with the Oklahoma Corporation Commission ("OCC") (Cause PD No. 202100175).

Thereafter, the Petition alleges the Fleners filed a Petition in the District Court in and for Latimer County, Oklahoma on November 1, 2021 (Case No. CJ-2021-29).  The Fleners asserted claims for pollution and injuries to their land resulting from the disposal of fluids at disposal wells owned and operated by Omni.

On June 10, 2021, Omni and A & A provided written notice to Ironshore of the Flener lawsuit and requested it defend and indemnify

2

them against the Fleners' claims under the terms of the Policy.  Omni and A & A allege that Ironshore "wrongfully refused to defend the Omni Entities in the [Flener lawsuit] and otherwise wrongfully denied coverage" by letter dated February 17, 2022.

Omni and A & A brought a claim against Ironshore for breach of the insurance contract represented in the Policy, including a claim for damages.  A claim was also included in the Petition for a "declaratory judgment pursuant to Article 1871, *et seq.*, of the Louisiana Code of Civil Procedure, to determine an actual substantial case or controversy which is real and immediate regarding Defendant's liability to the Omni Entities."  The controversy is identified as the parties' "respective rights and obligations under the Insurance Policy, including the Defendant's refusal to defend and indemnify the Omni Entities in the Lawsuit."  Omni and A & A sought damages and declaratory relief.[1]  This action was removed from the Louisiana state court on to the United States District Court for the Western District of Louisiana on November 10, 2022 (Case No. 22-cv-05939-SMH-CBW)(hereinafter referred to as the "Federal Louisiana Action").

Ironshore brought this action on November 16, 2022, seeking declaratory relief against Defendants pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.  Specifically, Ironshore alleges that it

---

[1] An Amended and Supplemental Petition for Declaratory Judgment and Damages was filed on October 27, 2022.  This document added certain communications between Ironshore and Omni and A & A, including a representation that Ironshore agreed to defend Omni and A & A under a reservation of rights.

issued the Policy to non-party Gibson Omni Parent, Inc. The Fleners filed a complaint with the OCC against A & A, a putative insured under the Policy, alleging that their real property was contaminated by A & A's disposal of contaminating fluid materials from a disposal well known as Kier #1A, owned or leased and operated by A & A.

The Complaint in this case also alleges that the Fleners filed an action against Omni, also a putative insured under the Policy, and A & A in the District Court in and for Latimer County, Oklahoma. The Fleners similarly sought damages as a result of the alleged disposal of contaminating fluid materials from the Kier #1A on their real property.

A & A sought the cost of defense and indemnity coverage under the Policy for both the OCC action and the Latimer County action brought by the Fleners. Omni sought the same in relation to the Latimer County case.

For its part, Ironshore contends the Policy provides no coverage for either action and seeks a declaratory judgment proclaiming this as a matter of law. Ironshore further asserts that, even if the policy provided coverage to A & A and/or Omni for one or both cases, an endorsement in the Policy provides that coverage would only apply if the damages assessed in those actions were in excess of the Contractor's Pollution Liability Policy issued by Defendant AIG Specialty Insurance Company ("AIG") to Omni. Ironshore represents in the Complaint that AIG has denied coverage to A & A for both the OCC proceeding and the Latimer

County action – a position Ironshore challenges.

Ironshore alleges that on September 9, 2022, A & A and Omni submitted a request for reimbursement costs to it under the Policy in connection with the Latimer County action and the OCC proceeding. On October 11, 2022, Ironshore rejected the request based upon a denial of coverage because the costs were incurred before the Latimer County action was tendered to Ironshore, without Ironshore's prior knowledge or consent, as allegedly required by the Policy, and/or for a claim or matters to which the Policy is not applicable, such as the OCC Proceeding.

In the subject action, Ironshore seeks a declaratory judgment on seven independent grounds of interpretation of coverage under the Policy. Ironshore alleges under each claim, no coverage for A & A and Omni would result under the Policy for either the Latimer County action or the OCC proceeding.

**OCC's Request for Dismissal**

In its Motion coming before the Court, the OCC seeks to be dismissed from this case under its Eleventh Amendment entitlement to sovereign immunity. The OCC contends that its sovereign immunity deprives this Court of subject matter jurisdiction. It also alleges that venue for actions against it lies in Oklahoma County, Oklahoma under Oklahoma state law. Since jurisdiction is lacking, the OCC also contends that any amendment of the Complaint to correct any deficiencies would be futile.

Ironshore counters that the OCC is named in this case as a nominal, but necessary party. It does not seek to enjoin the OCC or seek affirmative relief such as money damages against it but, rather, includes the OCC as a Defendant "so as to effectively bind OCC and/or the Fleners to Ironshore's coverage determination. The impact would prevent OCC and/or the Fleners subsequently commencing a plenary coverage action against Ironshore."[2]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Implicit in the enactment of the Eleventh Amendment is that state sovereign immunity ordinarily bars federal-court jurisdiction over private suits against a state by citizens of the state. *See* Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) ("To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying, we have extended a State's protection from suit to suits brought by the State's own citizens."). The sole exceptions to this recognized immunity are (1) when Congress has abrogated the states' immunity, as in legislation enacted to enforce the Fourteenth Amendment; and (2) when a state waives its immunity. *See*

---

2 Plaintiff's Opposition brief (Docket Entry No. 53) at pp. 1–2.

Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 669–70 (1999).

The OCC is an agency created by Oklahoma state law.  Okla. Const. Art. IX § 15.  Its mission is to "have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, . . . ."  Okla. Const. Art. IX, § 18.  State entities, agencies, and officials are provided immunity as "an arm of the state."  Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977).

The Eleventh Amendment immunity divests a federal court of subject matter jurisdiction, given "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000); see also Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state".).

Clearly, the OCC enjoys sovereign immunity from suit as an agency of the State of Oklahoma.  No statutory or constitutional exception to that immunity is applicable to the declaratory judgment action brought here by Ironshore.  Ironshore's contention that the OCC is merely a "nominal party" does not rescue the case from the jurisdictional deficiencies as Ironshore still seeks to bind the OCC to the declaratory relief it seeks.  Such relief would require an exercise of the prohibited

jurisdiction over the OCC.3  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  Basso v. Utah Power & Light Co._, 495 F.2d 906, 909 (10th Cir. 1974).  Accordingly, the OCC will be dismissed from this action.4

### The Fleners' Request for Dismissal

The Fleners request that they be dismissed from this action because they have entered into a settlement agreement with Omni and A & A which resolves all claims between these parties.  As a part of the settlement agreement, the Fleners also release any claims they might have against Ironshore.  Ironshore responds that dismissal is inappropriate because (1) the Fleners never answered in the case and, therefore, dismissal cannot be granted under Fed. R. Civ. P. 12(b); and (2) it has not seen the settlement agreement referred to in the Motion.

On July 14, 2023, the Fleners filed a Notice informing the Court that Ironshore had, in fact, received a copy of the settlement agreement at issue.  The Fleners also contest Ironshore's assertion that it cannot seek dismissal of the claims in this action.

---

3 This Court concurs with the OCC that amendment of the Complaint in this matter would be futile as no alteration in the manner in which the claims against the OCC could be made to remedy the lack of jurisdiction.
4 Because this Court lacks jurisdiction over the OCC, the issue of the propriety of venue need not be addressed.

Much like the OCC, Ironshore has stated that it named the Fleners as nominal parties in an effort to bind them to any declaratory judgment rendered in this action.  Since they are no longer asserting a claim against Ironshore's insured, the Fleners no longer need to be bound by any judgment in this case.  "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction. Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991).  This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome. Id. Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte. Johnson v. Riveland, 855 F.2d 1477, 1480 (10th Cir. 1988)." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996).

It is clear that the claims against the Fleners, nominal though they may be, are resolved and the dispute between the parties is moot, the procedural posture of the Fleners' pleading notwithstanding.  As the claims are moot, the Fleners are entitled to dismissal from this action.

**Omni and A & A's Request for Dismissal, Stay, or Transfer**

Omni and A & A seek dismissal of the claims against them in order to permit the Federal Louisiana Action to move forward as the first filed case.  Alternatively, they request that this case be stayed or transferred to Louisiana, essentially for the same reason – the Federal

Louisiana Action was the first to be filed which subsumed the claims asserted in this declaratory judgment case.

For its part, Ironshore contends (1) the first-to-file issue should be decided in the Federal Louisiana Action; (2) this action differs "materially and significantly" from the Federal Louisiana Action; (3) the chronology of events does not support the application of the first-to-file rule; and (4) the convenience of the parties weighs against the application of the first-to-file rule.

The first-to-file rule "permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) quoting Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga., 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999). The most instructive and authoritative case to direct the course of this Court under the circumstances presented by this case in applying the first-to-file rule is Wakaya Perfection, LLC v. Youngevity Internat'l, Inc., 910 F.3d 1118 (10th Cir. 2018). The Tenth Circuit states that "[w]hen two federal suits are pending, the district court cannot resort to a 'rigid mechanical solution.' . . . . As a starting point, courts should apply the first-to-file rule. . . . Under this rule, courts consider three factors: '(1) chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims

at stake.'"  Id. at 1124 (citations omitted).

In consideration of the first factor – the chronology of events, "the first court in which jurisdiction attaches has priority to consider the case" with "jurisdiction 'relat[ing] back to the filing of the complaint.'"  Id. (citation omitted).  It was determined in Wakaya that in the instance of a removal case, the date of the filing of the state court action governs.  Id. at 1125.  Clearly, the Federal Louisiana Action represents the first-filed case, as it was filed in the state court on August 1, 2022 while this action was filed on November 16, 2022.5

The second and third factors to be considered is whether the two cases overlap in the similarity of parties and similarity of issues or claims.  Initially, it should be noted that the Tenth Circuit "place[s] less weight on similarity when considering abstention in concurrent

---

5 Having determined that this Court has the second-filed case, the first consideration is whether this Court should consider the applicability first-to-file rule in the first instance.  This question has previously been considered in this District.  "Although the preference is for the first-filed court to decide on the application of the first-to-file rule, a second-filed court may exercise its discretion and consider the application of the first-to-file rule in the first instance.  Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 679 F.Supp.2d 1287, 1296-97 (D.Kan. 2010).  If it is determined that the first-to-file rule applies, 'the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'  Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997); see Cherokee Nation v. Nash, 724 F.Supp.2d 1159, 1171 (N.D.Okla. 2010)('After determining whether the first to file rule generally applies, courts within the Tenth Circuit have the option of staying the second-filed action pending the outcome of the first-filed action, rather than immediately transferring the case to the first-filed court.')."  Chieftain Royalty Co. v. XTO Energy, Inc., 2011 WL 1533073, at *1 (E.D. Okla. Apr. 22, 2011).

federal cases than when one of the cases is in state court; when two federal cases are involved, we do not risk depriving a litigant of a federal forum." <u>Id</u>. at 1127 (citation omitted).

With the dismissal of the OCC and the Fleners from this case, the only difference in parties is the inclusion of AIG in this case.  This Court would first note that the factor requires "'the parties do not need to be identical' and that '[o]nly similarity or substantial overlap is required.'  If substantial similarity exists, 'the parties need not be identical in order to transfer pursuant to the first to file rule.'" <u>Colton v. Contintental Res., Inc.</u>, 2022 WL 17486848, at *2 (E.D. Okla. Dec. 2, 2022)(citations omitted).

AIG is included in this action by Ironshore to assert its coverage is excess in nature and only engages after AIG's coverage is exhausted. Nothing prevents Ironshore from asserting this defense in the Federal Louisiana Action without naming AIG as a party.  Should Ironshore wish to include AIG in that case, however, it is acknowledged by the parties that the federal court in Louisiana certainly possesses the requisite jurisdiction to consider Ironshore's claim against AIG.  In short, the parties are substantially similar between the two federal cases.

Certainly, the claims overlap in the two cases.  In addition to the identical declaratory judgment action pending in this case, the Federal Louisiana Action includes a breach of contract claim which is not a part of this declaratory judgment action.  Therefore, in reality,

the prosecution of the Federal Louisiana Action will not only resolve the claims in this case but also the substantive damage claim brought by Omni and A & A against Ironshore.   This will provide more complete relief to the parties than would be afforded if this case were to proceed to conclusion.

The Wakaya case also allows for the application of equitable considerations, such as "to prevent the misuse of litigation in the nature of vexatious and oppressive foreign suits," preventing forum shopping, or "circumvention of the rules of procedure or court rulings." Id. at 1127.   This Court does not perceive any improper motivations on the part of the litigants which would require these considerations.

After considering the first-to-file factors endorsed by the Tenth Circuit, this Court concludes that the Federal Louisiana Action which was the first case filed may take precedent over this case in the resolution of the dispute between the parties.   The fact remains that as the first-to-file court, the United States District Court for the Western District of Louisiana should make the final determination as to the applicability of the first-to-file rule.   This is particularly the case since other issues have now apparently been brought up in the Federal Louisiana Action, including a *forum non conveniens* motion from Ironshore.

The last determination to be made by this Court concerns the status of this case in light of the Federal Louisiana Action standing as the

13

first-filed case.  The choices include dismissal, transfer to the first-filed court, or staying these proceedings to allow the first-filed court to determine definitively the application of the first-to-file rule and, ultimately, the merits of the Federal Louisiana Action.  This Court concludes that, in order to provide deference to the Louisiana District Court, this action should be stayed to allow that court to proceed on the case before it.

IT IS THEREFORE ORDERED that Defendant Oklahoma Corporation Commission's Motion to Dismiss Under the Eleventh Amendment, for Lack of Subject Matter Jurisdiction and Improper Venue (Docket Entry #49) is hereby **GRANTED.**  Defendant Oklahoma Corporation Commission is hereby **DISMISSED** from this action.

IT IS FURTHER ORDERED that the Motion of Defendants Daniel and Danielle Flener to Dismiss Plaintiff's Claim Against Them as Moot (Docket Entry #56) is hereby **GRANTED.**  Defendants Daniel and Danielle Flener are hereby **DISMISSED** from this action.

IT IS FURTHER ORDERED that Defendants A & A Tank Truck Co. and Omni Environmental Solutions Inc.'s Motion to Stay or Dismiss Case, or to Transfer Case to Western District of Louisiana to Determine First-to-File Issues (Docket Entry #27) is hereby **GRANTED**, in part, in that this case is hereby **STAYED** to allow the United States District Court for the Western District of Louisiana to proceed to definitively determine the application of the first-to-file rule.  The parties shall file a status

report no later than **APRIL 6, 2024** to keep this Court informed on the proceedings in the Federal Louisiana Action.  The remaining alternative relief requested in the Motion – dismissal and to transfer the case – is hereby **DENIED.**

IT IS SO ORDERED this 28th day of September, 2023.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

15